UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DUSTYN JAMES TAYLOR,<br><br>Defendant. | 4:25-CR-40012-KES<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS SUPPLEMENTED AND DENYING MOTION TO SUPPRESS |

Defendant, Dustyn Taylor, is charged with one count of possession of a firearm by a prohibited person, in violation of 21 U.S.C. §§ 922(g)(1) and 924(a)(8). Docket 1 at 1. Taylor filed a motion to suppress evidence that was seized during a search of his vehicle, where officers found two firearms. *See* Docket 25. Taylor contends that the evidence was obtained in violation of the Fourth Amendment because law enforcement conducted the vehicle search without a warrant and lacked reasonable suspicion or probable cause to do so. *Id.* at 1. The United States opposes Taylor's motion. *See* Docket 35.

The court referred Taylor's motion to Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended denying Taylor's motion to suppress. Docket 44 at 21. Taylor filed three objections to the Report recommending his motion to suppress be denied. *See* Docket 48. After a de novo review of the Report and Recommendation and the record in this case, the court issues the following order.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

Taylor did not object to the facts set forth by the magistrate judge in the Report and Recommendation. *See* Docket 48. After a de novo review of the transcript of the evidentiary hearing and the exhibits received into evidence, *see* Dockets 39-41, the court adopts the facts as set forth in the magistrate judge's Report and Recommendation, *see* Docket 44 at 2-10.

## DISCUSSION

Taylor raises three legal objections to the Report and Recommendation. *See* Docket 48. First, he objects to the magistrate judge's finding that law enforcement had probable cause to search Taylor's vehicle even though the

2

officers had already observed a firearm inside the vehicle in plain view. *Id.* at 1. Second, Taylor objects to the magistrate judge's determination that law enforcement had reasonable suspicion to detain him in the first instance. *Id.* at 2. Third, Taylor agrees with the magistrate judge's conclusion that law enforcement unlawfully prolonged his stop and detention, but he objects to the magistrate judge's finding that the exclusionary rule is nevertheless inapplicable. *Id.* at 3. The court addresses each objection in turn.

I. **Whether probable cause existed to search Taylor's vehicle**

Taylor first objects to the magistrate judge's conclusion that probable cause existed to search his vehicle. *Id.* at 1. Taylor argues that the firearm observed by police, despite observing it sitting in plain view on the passenger seat of his vehicle, was not immediately apparent as contraband. *Id.* at 2. Because Taylor denied owning the firearm, he argues that law enforcement could not determine with certainty to whom the weapon belonged or whether it was contraband in the first place. *Id.* Because of this, Taylor maintains that no exception to the warrant requirement applies, and the two firearms discovered during the vehicle search should be suppressed as fruits of the poisonous tree. *Id.*

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is presumptively unreasonable absent some exception to the warrant requirement." *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020)

(internal quotation marks omitted). The automobile and plain view doctrines are two such exceptions to the warrant requirement.

The Fourth Amendment's automobile exception permits an officer to "search a vehicle without a warrant if, 'given the totality of the circumstances, a reasonable person could believe that there is a fair probability that contraband or evidence of a crime would be found in a particular place.'" *United States v. Virrueta*, 121 F.4th 706, 710 (8th Cir. 2024) (quoting *United States v. Rodriguez*, 414 F.3d 837, 843 (8th Cir. 2005)). "When probable cause exists to believe that contraband is located inside the vehicle, a police officer may search the passenger compartment and trunk under . . . the automobile exception." *United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021) (internal quotation marks omitted). Under the plain view doctrine, law enforcement may seize evidence without a warrant "if the officers are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *Id.*

Here, the officers had probable cause to search Taylor's vehicle because both the plain view and automobile exceptions apply. After locating Robert Yellowbird—who detectives knew had an outstanding arrest warrant for first-degree robbery—and Taylor in the alley outside of Yellowbird's residence, Detective Leacraft immediately recognized Taylor and was aware of his prior felony conviction. Ex. 1 at 1:47; Docket 41 at 6. After placing Yellowbird in the backseat of the patrol vehicle, the detectives detained Taylor while they

4

investigated the object Yellowbird had placed beneath a nearby Ford Focus. Ex. 1 at 3:50-3:53, 5:20-24. Detective Leacraft suspected that the object was a firearm, and indeed it was. *Id.* at 2:07, 5:20-24. While locating Yellowbird's firearm, the detectives also observed a firearm resting on the passenger seat of the Ford Focus. Docket 41 at 14-15. The detectives were lawfully outside the vehicle investigating the object Yellowbird had discarded when they noticed the firearm inside the Ford Focus. And the firearm's incriminating character was immediately apparent because Detective Leacraft knew from the outset that Taylor was a convicted felon. *See* Ex. 1 at 1:47. Although Taylor's wife was found in the vehicle when the detectives arrived, she immediately and adamantly denied ownership of the firearm. *Id.* at 2:00-2:06, 5:20-5:30. Detective Brian Mayberry then requested a registration check on the Ford Focus over the radio, which revealed that the vehicle was registered to Taylor. Docket 41 at 90-91.

     Once the detectives reported seeing the firearm on Taylor's passenger seat in plain view, coupled with the knowledge that Taylor was a known felon, law enforcement had the requisite probable cause to search the vehicle. *See Smith*, 990 F.3d at 612; *see also United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016) (stating that "probable cause to believe that an automobile contains contraband that is subject to seizure and destruction has long been held to justify a warrantless search of the automobile and seizure of the contraband"). Based on these facts in totality, it was reasonable for law enforcement to infer there was a fair probability that Taylor unlawfully possessed a firearm in his

5

vehicle. *See Virrueta*, 121 F.4th at 710. Contrary to Taylor's assertion that law enforcement could not determine "with certainty" to whom the firearm belonged, the probable cause standard does not demand as much. *See id.* Thus, the evidence found by law enforcement while conducting a search of Taylor's vehicle should not be suppressed, and Taylor's objection is overruled.

II.   **Whether reasonable suspicion existed to detain Taylor**

Taylor next objects to the magistrate judge's finding that law enforcement had reasonable suspicion to detain him. Docket 48 at 2. Taylor contends that even if the detectives had probable cause to search his vehicle, "law enforcement lack[ed] sufficient evidence or facts available to them to suspect that [he] was in possession of the firearm." *Id.* Although Taylor admits that he rode in his car to Yellowbird's residence, he states that he "saw no weapon and possessed no weapon." *Id.* Because the detectives never saw him in or near his vehicle, Taylor argues that "detaining [him] was unlawful in the first place." *Id.*

A police officer may briefly detain an individual to make reasonable inquiries if the officer "has reasonable suspicion that criminal activity may be afoot." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008). "To justify a *Terry* stop, a 'police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In determining whether a set of facts gives rise to reasonable suspicion, the court must consider the totality of the circumstances rather than evaluating each

6

fact in isolation. *United States v. Riley*, 684 F.3d 758, 763 (8th Cir. 2012). When multiple officers are involved in an investigation, reasonable suspicion may be based on their collective knowledge, and "the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023). "The court may consider any added meaning that certain conduct might suggest to experienced officers in the field, trained in the observation of criminal activity." *Riley*, 684 F.3d at 763 (internal quotation marks omitted).

      Here, as the magistrate judge noted, because there was probable cause to believe that Taylor was unlawfully in possession of a firearm, there was reasonable suspicion that he was committing that same offense. *See United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002) (holding that the reasonable suspicion standard "is less demanding than the standard of probable cause that governs arrests and full-scale Fourth Amendment searches, both with respect to the amount of supporting information that is required to establish reasonable suspicion and with respect to the degree of reliability that the information must exhibit").

      On the scene, Taylor denied owning the firearm, and now argues that because law enforcement never saw him in or near his vehicle, his detainment was not reasonable. Docket 48 at 2. Taylor's argument, however, overlooks the significance of the firearm being found in *his* vehicle while he stood only 15 to 20 feet away. *See* Docket 41 at 29. Detective Leacraft was first on the scene

7

and immediately recognized Taylor as a known felon. Ex. 1 at 1:47. Because Taylor and his wife were the only individuals to arrive at Yellowbird's residence in his vehicle, and because Taylor's wife denied owning the firearm, it was reasonable for law enforcement to detain Taylor to secure the scene and investigate the matter. *See Riley*, 684 F.3d at 763 (stating that reasonable suspicion "requires that the officer's suspicion be based upon particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed"). Taken together, these facts gave law enforcement a reasonable basis to suspect that Taylor unlawfully possessed a firearm, despite not seeing him in or next to the vehicle. Thus, any inculpatory evidence discovered after searching the vehicle is admissible, and Taylor's objection is overruled.

### III. Whether the exclusionary rule is inapplicable

Taylor last objects to the magistrate judge's determination that the exclusionary rule does not apply despite the magistrate judge's finding that law enforcement unlawfully extended his detention to conduct a drug-dog sniff. Docket 48 at 3. Taylor argues that "no search of [Taylor's] vehicle occurred until after the stop was unreasonably extended[,]" and therefore the search violated Taylor's constitutional rights. *Id.* Taylor contends that "law enforcement was unsure of its legal standing to enter and search the vehicle and was looking for more ways to solidify its legal reasoning to enter and search the vehicle." *Id.* As such, Taylor maintains all seized evidence found during the search should be excluded. *Id.* at 4.

"Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.' " *United States v. Miller*, 11 F.4th 944, 954 (8th Cir. 2021) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011)). "The exclusionary rule extends to evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (cleaned up and citation omitted). But "the 'illegality must at least be a but-for cause of obtaining the evidence.' " *Miller*, 11 F.4th at 954 (cleaned up) (quoting *Riesselman*, 646 F.3d at 1079).

Here, as explained above, the two firearms found inside Taylor's vehicle were not obtained as the result of an illegal entry. Even if law enforcement unlawfully prolonged Taylor's detention by calling for a drug-detection dog, the magistrate judge correctly concluded that the extension occurred only after probable cause to search the vehicle existed. *See* Docket 44 at 20-21. As such, the inculpatory evidence found in Taylor's vehicle was based on probable cause to search and is not the fruit of the poisonous tree. *See United States v. Finley*, 56 F.4th 1159, 1166 (8th Cir. 2023) (cleaned up and citation omitted) (stating that "for there to be 'fruit,' there must first be a 'poisonous tree,' that is, an illegal search or seizure or an illegality"). For these reasons, Taylor's argument that no search of his vehicle occurred until after the stop was unreasonably extended is unavailing. Because the firearms found in Taylor's vehicle were

discovered lawfully—and thus not fruits of the poisonous tree—the exclusionary rule is inapplicable, and Taylor's objection is overruled.

## CONCLUSION

The court refuses to suppress any evidence gathered after the search of Taylor's vehicle. The court adopts Magistrate Judge Duffy's Report and Recommendation as supplemented herein and denies Taylor's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 44) denying Taylor's motion to suppress is adopted as supplemented by this opinion. It is

FURTHER ORDERED that Taylor's motion to suppress (Docket 25) is DENIED.

Dated November 12, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE